2002 OK 84

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jim D. SHOFNER, Respondent.**

**No. SCBD 4672.**

Supreme Court of Oklahoma.

Oct. 29, 2002.

Nathan A. Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

William G. LaSorsa, Tulsa, for respondent.

LAVENDER, J.

¶ 1 Complainant, the Oklahoma Bar Association (OBA), by an October 29, 2001 letter (with attached documentation) from its General Counsel's Office, notified us respondent, Jim D. Shofner, a licensed attorney, was convicted of the federal felony crime of conspiracy, 18 U.S.C. § 371 (2000), after being charged and pleading guilty thereto in the United States District Court for the Northern District of Oklahoma. Section 371 provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Materials accompanying the OBA's letter included the charging information and the "judgment in a criminal case" entered in October 2001. In essence, the charge involved respondent's participation, along with a client, in fraudulently concealing assets in the client's bankruptcy proceeding from the appointed trustee and creditors, including the Internal Revenue Service (IRS). Respondent was sentenced to eighteen (18) months imprisonment (commencing on November 5, 2001), two years supervised release after serving his prison term, plus he was fined $4,000.00, and ordered to pay restitution in the amount of $121,328.46 (which has been paid in full according to the federal judgment) and a $100.00 special assessment to the United States.

■ ¶ 2 Pursuant to Rule 7.1 (Criminal Conviction of Lawyer) and Rule 7.3 (Interim Suspension from Practice) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1–A, we issued an interim suspension suspending respondent from the practice of law by a December 3, 2001 Order because the conviction appeared to facially demonstrate respondent's unfitness to practice law. *See State ex rel. Oklahoma Bar Ass'n v. Badger,* 1993 OK 43, 901 P.2d 790, 791 (interim suspension order required when crime for which a respondent lawyer stands convicted facially demonstrates unfitness to practice law) and *State ex rel. Oklahoma Bar Ass'n v. Armstrong,* 1990 OK 9, 791 P.2d 815, 818 (conviction of some crimes will facially demonstrate lawyer's unfitness to practice while conviction of others will not). The December 2001 Order—consistent with Rule 7.4 (Conviction Becoming Final Without Appeal), RGDP—also directed respondent to show cause in writing why final discipline should not be imposed and to inform us whether he desired a hearing. Thereafter, he made a written request for a hearing. The OBA General Counsel's Office filed an amended response to the request informing us it had no objection to this Court directing a hearing to allow respondent the opportunity to present evidence tending to mitigate the severity of discipline to be imposed. By a March 4, 2001 Order we referred the matter to a Professional Responsibility Tribunal (PRT) trial panel for such a hearing. The March 4th Order also allowed the OBA to appropriately respond to any mitigating evidence offered and to adduce proof in aggravation of the discipline to be imposed.[1]

---

1. Rule 7 (Summary Disciplinary Proceedings Before Supreme Court) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1–A, sets out the procedures for summary disciplinary proceedings before this Court. *State ex rel. Oklahoma Bar Ass'n v. Willis,* 1993 OK 138, 863 P.2d 1211, 1212. Rule 7.1 thereof provides that an attorney who has been convicted of a crime demonstrating their unfitness to practice law shall be subject to discipline. Rule 7.4 provides that if the conviction becomes final without appeal (as here) this Court shall order the lawyer to show cause why a final order of discipline should not be made, and the lawyer may in the interest of explaining his conduct or by way of mitigating the discipline to be imposed submit a brief and evidence tending to mitigate the severity of discipline. Rule 7.4 also allows the attorney's response to the show cause order to make a request for a hearing. In a post-conviction bar disciplinary hearing facts that gave rise to the criminal charge cannot be relitigated. *State ex rel. Oklahoma Bar Ass'n v. Livshee,* 1994 OK 12, 870 P.2d 770, 772. In such a hearing, the range of permissible inquiry is confined to issues germane to mitigation or severity of the bar disciplinary sanction to be visited upon the respondent lawyer. *Id.*

¶ 3 The PRT trial panel hearing was held in April 2002 and its written report was filed with this Court in June, as was the hearing transcript. In July 2002 the parties submitted briefs on their positions concerning discipline. The PRT trial panel report recommends a suspension of two years and one day, respondent requests a suspension of two years or less and complainant argues for disbarment.[2] After *de novo* review, we find the appropriate discipline to be disbarment. We also hold respondent should pay the costs of these proceedings.[3]

¶ 4 In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive original jurisdiction, not as a reviewing tribunal. *State ex rel. Oklahoma Bar Ass'n v. Downing*, 1990 OK 102, 804 P.2d 1120, 1122. It is our nondelegable, constitutional responsibility to decide the discipline warranted when an attorney is found to have engaged in professional misconduct. *Id.; State ex rel. Oklahoma Bar Ass'n v. Barnett*, 1997 OK 61, ¶ 2, 940 P.2d 493, 495 (Court's duty in misconduct cases is to independently determine the proper discipline). Recommendations of a PRT trial panel are merely advisory.

¶ 5 Our responsibility is not to punish the offending lawyer, but to assess his/her continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Meek*, 1994 OK 118, 895 P.2d 692, 699. In misconduct cases, we are required to exercise our responsibility with a view to safeguarding the interests of the public, the courts and the legal profession. *Id.* In determining the proper discipline this Court compares the circumstances of the involved case with those of similar previous disciplinary cases involving other attorneys and we examine the respondent's previous disciplinary record—both inquiries geared to determining how best to serve the welfare of the public and the integrity of the bar. *Meek, supra,* 895 P.2d at 700. Also, to arrive at appropriate discipline, a fit factor to consider is the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. *State ex rel. Oklahoma Bar Ass'n v. McMillian,* 1989 OK 16, 770 P.2d 892, 899; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, 567 P.2d 975, 978.

¶ 6 Mitigating circumstances are also often considered when assessing the appropriate measure of discipline. *State ex rel. Oklahoma Bar Ass'n v. Thomas,* 1995 OK 145, 911 P.2d 907, 913. Also, although discipline should be administered fairly (i.e.even-handedly), this Court has recognized that the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. *See State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, 824 P.2d 1127, 1130.

¶ 7 There is no question respondent stands convicted of a crime that, on its face, shows his unfitness to practice law. The information in the federal criminal case sets out the circumstances which underlie respondent's conviction. In essence, the charging information sets out facts that indicate respondent knowingly and fraudulently assisted a client—Barbara Jean Tillman, a/k/a Barbara Jean Hale, a/k/a Barbie Hale, and

---

**2.** An attorney suspended for a period longer than two years or that is disbarred must file a petition for reinstatement with the Clerk of this Court. Rule 11.1 (Petition for Reinstatement), RGDP. Rules 11.1 through 11.7, RGDP, set out detailed procedures regarding the petition and the manner of its handling, including the placement of the burden of proof, by clear and convincing evidence, on the attorney seeking reinstatement. These Rules also make plain that reinstatement is not automatic and a lawyer suspended for more than two years or that is disbarred may be reinstated only upon an order/decision of this Court. In contrast, an attorney suspended for two years or less upon disciplinary charges may resume practice upon expiration of the suspension period by filing with the Clerk an original and two copies of an affidavit affirming they have not engaged in the unauthorized practice of law, otherwise violated the Oklahoma Bar Association (OBA) rules or the terms of the suspension, and no order of this Court is necessary. Rule 11.8 [Reinstatement Without Order After Suspensions of Two (2) Years or Less], RGDP. Material deletions or misrepresentations in the affidavit are grounds for subsequent discipline. *Id.*

**3.** When discipline is imposed Rule 6.16, RGDP, provides the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court. No good cause for remission has been shown.

a/k/a B. Hale (Tillman)—in concealing a piece of real property and/or the proceeds of its sale from the appointed trustee and creditors, including the Internal Revenue Service, in Tillman's bankruptcy case where respondent was acting as her attorney. The information also shows that respondent was an active participant in the fraudulent, deceitful conduct. The information sets out that the scheme to conceal involved the client's use of a pseudonym and deposit of the sale proceeds into respondent's trust account(s). Said proceeds were eventually paid to the client, or other persons for her use and benefit, by respondent. Rule 7.2 (Transmittal of Record Relating to Conviction), RGDP, provides that the information and the judgment and sentence of conviction shall be conclusive evidence of the conviction of the crime upon which the judgment and sentence is based.[4] At a minimum, respondent's conduct violated Rule 8.4(b) and (c) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch.1, App. 3–A, which provide: "[i]t is professional misconduct for a lawyer to ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects [or] (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation ...."

¶ 8 Respondent did not testify at the PRT hearing, as he is serving his prison sentence at the federal penal facility in El Reno, Oklahoma. His case in mitigation was presented by his attorney, who called numerous witnesses. The witnesses included other attorneys, two district court judges, a special judge and others who have known him for various lengths of time professionally and/or socially. More than one of these witnesses have known him for over thirty (30) years. Letters were also submitted on his behalf, including letters from his children, one of whom is an attorney practicing in Atlanta, Georgia. The OBA called no witnesses and it relies on the nature of the crime committed for its recommendation of disbarment.

¶ 9 Without exception the witnesses presented by respondent had favorable opinions of him. His honesty and integrity were vouched for, as was his ability as a lawyer. The evidence at the hearing also showed that respondent has been a licensed practicing attorney in Oklahoma for more than thirty-three (33) years and, but for this criminal conviction and the conduct leading to it, he has never been the subject of a grievance filed against him with the OBA. Those who had talked to him concerning the crime he committed also indicated respondent acknowledged his wrongful conduct and the witnesses were generally shocked at learning of his involvement in such behavior (because of his reputation for honesty and integrity). Witnesses also expressed a view that the criminal activity involved was aberrational and would not be repeated. However, no witness, save one, had any detailed explanation for why respondent would engage in such serious wrongdoing on behalf of a client.

¶ 10 The one witness who expressed any type of detailed view of why respondent engaged in such serious and reprehensible misconduct, misconduct directly engaged in in his capacity as an attorney, was another lawyer that has known him for over twenty (20) years and is representing him in some type of civil case tied to the Tillman matter. Essentially, this attorney expressed the view that respondent, although now realizing the wrongfulness of his conduct, initially believed the proceeds of the real estate sale that were concealed in the involved bankruptcy proceeding were subject to some type of reporting exemption and that the client, Tillman, being a particularly manipulative person, somehow convinced respondent to engage in the wrongful conduct. Evidence was also presented that respondent did not engage in the criminal misconduct for his own personal financial gain. Further, as previously noted, respondent has made restitution in regard to the money concealed in the bankruptcy proceeding.

4. We note that at page two of respondent's response to complainant's brief in chief (filed July 24, 2002) it is stated, "[i]n the interest of judicial economy, respondent adopts the facts contained in the Plea Agreement at pages 5 through 7 previously filed with this Court." We assume the

"Plea Agreement" referred to is a document connected with, submitted in or filed in the federal criminal case. No such "Plea Agreement" has previously been filed with this Court. Nor was it admitted at the Professional Responsibility Tribunal (PRT) trial panel hearing held in April 2002.

¶ 11 This Court, on occasion, has administered discipline less than disbarment when an attorney has been convicted of a crime involving dishonest conduct. *See e.g. State ex rel. Oklahoma Bar Ass'n v. Dennison,* 1994 OK 33, 872 P.2d 403 (31 month suspension after conviction for making false statements to federally insured financial institution); *State ex rel. Oklahoma Bar Ass'n v. Willis,* 1993 OK 138, 863 P.2d 1211 (15 month suspension after conviction of felony charge of obtaining controlled drugs by misrepresentation); *State ex rel. Oklahoma Bar Ass'n v. Simms,* 1978 OK 153, 590 P.2d 184 (20–24 month suspension after conviction for willfully making and subscribing individual tax returns believing same to not be true). *Dennison, Willis* and *Simms,* however, did not involve convictions intimately tied to the respondents' role as attorney. Here, the very nature of respondent's conviction involves active fraud and deception on behalf of a client.

■■■ ¶ 12 Even when the fraudulent activity involved an attorney's personal or family business dealings and not the representation of an outside party, we deemed disbarment the appropriate discipline for convictions of crimes similar to that which this respondent attorney stands convicted. *State ex rel. Oklahoma Bar Ass'n v. Crabtree,* 1995 OK 123, 907 P.2d 1045. In *Crabtree* the attorney was convicted of four federal counts concerning bankruptcy fraud and money laundering, the charges growing out of bankruptcy proceedings of the attorney, his wife, certain trusts set up for his children and a family partnership. *United States v. Crabtree,* 7 F.3d 1045 (10th Cir.1993)(table of decisions without reported opinions)(unpublished order and judgment found at 1993 WL 359689)(Case No. 92–6330). The situation in *Crabtree,* as here, involved concealment of assets relating to bankruptcy proceedings. We also disbarred an attorney convicted of two related felonies in two different federal district courts in *State ex rel. Oklahoma Bar Ass'n v. Hornung,* 1991 OK 56, 813 P.2d 1041, 1041–

1042. The crimes were related and one was for conspiring with a client to defraud the United States by concealing taxable income of the client, her deceased husband and his brother (the brothers were involved in drug smuggling activities) in violation of 18 U.S.C. § 371. *United States v. Hornung,* 848 F.2d 1040 (10th Cir.1988), *cert. denied* 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989). The other conviction was for interstate travel to promote, manage, establish, carry on and facilitate an unlawful business enterprise involving cocaine. *United States v. Green,* 882 F.2d 999 (5th Cir.1989).

■■■ ¶ 13 As we view the matter, this case does not neatly fit into any of our prior cases. However, it is clear to us that respondent's criminal conduct was of an extremely serious nature. It involved fraudulent conduct in his capacity as an attorney, conduct intended to defraud creditors in his client's bankruptcy, including the IRS. It also involved fraud upon a bankruptcy court. Even considering the evidence presented by respondent in mitigation, we conclude that disbarment is the appropriate discipline in this case and that disbarment is the discipline that will best serve the welfare of the public and the integrity of the bar.[5]

¶ 14 **IT IS ORDERED THAT RESPONDENT IS DISBARRED AND HIS NAME SHOULD BE STRICKEN FROM THE ROLL OF ATTORNEYS, THE DISBARMENT TO BE EFFECTIVE FROM THE DATE RESPONDENT WAS SUSPENDED BY THIS COURT'S DECEMBER 3, 2001 ORDER. FURTHER, RESPONDENT IS ORDERED TO PAY THE COSTS OF THIS DISCIPLINARY PROCEEDING IN THE AMOUNT OF $1,473.68 WITHIN NINETY (90) DAYS FROM THE DATE THIS OPINION BECOMES FINAL.**

¶ 15 HARGRAVE, C.J., WATT, V.C.J., HODGES, KAUGER, SUMMERS and WINCHESTER, JJ., concur.

---

5. Although respondent has made restitution, judicial consideration of restitution as a mitigating factor in disciplinary proceedings is apt to create an impression that sanctions are proportioned with one's ability to pay, rather than reviewed upon the seriousness of the misconduct. *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 1982 OK 39, 642 P.2d 262, 267. Thus, though we have considered his restitution, we do not believe that fact is entitled to much weight.

¶ 16  OPALA, J., concurs in respondent's disbarment, but would prefer to make its effective date coincidental with the time the court's opinion becomes final.

¶ 17  BOUDREAU, J., disqualified.